**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| **OJ COMMERCE LLC**, | ) | CASE NO. 0:19-cv-62974-RAR |
| Plaintiff, | ) | |
| v. | ) | JUDGE RODOLFO A. RUIZ |
| **HOME CITY INC.,** | ) | |
| Defendant/Third-Party Plaintiff, | ) | |
| v. | ) | |
| **THE NOCO COMPANY**, *et al.* | ) | |
| Third Party Defendants. | ) | |

---

**THIRD-PARTY DEFENDANT NOCO'S MOTION TO DISMISS OR TRANSFER**

---

Pursuant to Fed.R.Civ.P. 12(b)(2), (3), (6), and (7), Defendant The NOCO Company ("***NOCO***") respectfully requests that this Court dismiss the Third-Party Complaint against NOCO, with prejudice, for lack of personal jurisdiction, lack of venue, failure to state a claim, and failure to name a required party, or, alternatively, transfer the Third Party Complaint to the Northern District of Ohio.[1]

Third-Party Plaintiff Home City, Inc. ("***Home City***") has filed a Third-Party Complaint against NOCO and other intellectual property owners seeking indemnification against claims brought by OJ Commerce, LLC ("***OJC***") stemming from Amazon's decision to terminate OJC's

---

[1] In light of the Court's September 14, 2020 order, counsel for NOCO conferred with counsel for Standard Sales and Actiontec about the possibility of filing a joint response to Home City's Third Party Complaint. While all three third-party defendants are filing motions to dismiss, counsel agreed that NOCO would need to file separately from Standard Sales and Actiontec, given factual differences, varied procedural history, and distinct arguments each party intended to raise.

seller account in light of numerous allegations by multiple entities of counterfeit sales by OJC. OJC previously brought claims directly against NOCO in this Court[2] regarding the same matter, and those claims were transferred to the Northern District of Ohio and subsequently voluntarily dismissed.[3]

As this Court has decided once already, venue is improper in the Southern District of Florida because NOCO is an Ohio company and the events giving rise to the underlying claim occurred in Ohio. NOCO is not subject to this Court's personal jurisdiction because it has only minimal contacts in Florida with no nexus to Home City's causes of action. Even if venue and jurisdiction were proper, however, the Third-Party Complaint fails to sufficiently allege Home City's innocence, NOCO's fault, or any relationship between the parties that could support a claim for indemnification. It also fails to explain how the NOCO products sold by OJC are in fact authentic, or how NOCO is liable for Amazon's exercise of judgment in conducting an independent investigation and suspending OJC's account, based on complaints filed by multiple rights owners, and following requests for proof of product authenticity. Lastly, Home City has failed to name Amazon, an indispensable party to this litigation. Accordingly, the Court should dismiss the Third-Party Complaint against NOCO, with prejudice, or transfer the case to the Northern District of Ohio.

## I. STATEMENT OF FACTS

NOCO is an Ohio corporation with its principal place of business in Cuyahoga

[2] *See OJ Commerce LLC v. The NOCO Company*, No. 0:20-cv-60221-WPD (S.D. Fla., filed Feb. 2, 2020).

[3] *See* OJ Commerce LLC v. Noco Company, No. 1:20-cv-01198-PAB (N.D. Ohio, filed June 1, 2020).

County, Ohio. *See* Declaration of Jeffrey Weiner, attached hereto as Exhibit 1, at ¶3. NOCO designs, manufactures, and sells battery chargers, portable power devices, and related battery products and accessories. NOCO sells these products on its website (https://no.co/) and to wholesalers and authorized resellers with whom it enters into Reseller Agreements. *See The NOCO Company v. OJCommerce, LLC*, et al., No. 1:19-cv-02298-JG (N.D. Ohio), Doc. No. 1-1.

NOCO's Reseller Agreements limit resellers' use of the company's copyrights and trademarks to avoid brand dilution, tarnishment, and consumer confusion as to the origin of the products. The Reseller Agreements only permit sales of NOCO products to retail consumers, expressly prohibit bulk sales or sales to wholesalers, and specify that any warranties associated with NOCO products are only valid when sold by authorized resellers. *Id.* These agreements promote fair competition among resellers and protect NOCO's brand, goodwill, and valuable intellectual property, including its proprietary images, designs, content, and registered trademarks.

OJC is a Florida-based online retailer that transacts business in Ohio and throughout the country via its interactive website ojcommerce.com (the "***Website***"), and interactive storefronts on Amazon and eBay. In late May 2019, NOCO learned that OJC was selling NOCO products online and using NOCO's trademarks and copyrights without authorization, under the amazon.com storefront OJCommerce, on its Website, and possibly other places online.

On May 29, 2019, NOCO's counsel sent a letter notifying OJC that these sales were unauthorized and violated NOCO's copyrights and trademarks and demanded that OJC cease such actions immediately. *See The NOCO Company v. OJCommerce, LLC*, et al., No. 1:19-cv-02298-JG (N.D. Ohio), Doc. No. 1-4.

NOCO also requested that Amazon investigate OJC's sale of NOCO products. NOCO made this request from Ohio. *See* Weiner Decl. at ¶5. Amazon initiated an investigation of OJC

and requested proof of product authenticity from OJC in order to reinstate the account. *See OJ Commerce LLC v. The NOCO Company*, No. 0:20-cv-60221-WPD (S.D. Fla., filed Feb. 2, 2020), Doc. Nos. 1-10, 1-14.

After OJC failed to stop selling the products in question and continued violating NOCO's rights, on October 2, 2019, NOCO filed suit against OJC in the United States District Court for the Northern District of Ohio, alleging claims for trademark infringement, trademark dilution, tortious interference with the Reseller Agreements, unfair competition, violation of the Ohio Deceptive Trade Practices Act, and tortious interference with the Reseller Agreements. *See The NOCO Company v. OJCommerce, LLC*, et al., No. 1:19-cv-02298-JG (N.D. Ohio). NOCO sought declaratory and injunctive relief to prevent future violations, as well as monetary damages for past violations.

Based on the results of its own independent investigation, and citing complaints filed by multiple rights owners, including Home City, Amazon "temporarily deactivated" OJC's account on February 2, 2020. *See* ECF #52 at p.57. Amazon explained that it had "not received a valid plan of action" from OJC, including any proof of non-infringement or documentation establishing the authenticity of the products. *See id.*

OJC filed its own lawsuit against NOCO on February 2, 2020. OJC alleged that NOCO made "false allegations" to Amazon that OJC was selling counterfeit NOCO products in an effort to remove OJC from the Amazon marketplace. OJC asserted claims for a violation of the Lanham Act, defamation, tortious interference with business relationship, and a violation of the Florida Deceptive and Unfair Trade Practices Act. NOCO moved to transfer the case to the Northern District of Ohio, on the grounds that venue was lacking in this Court and that NOCO was pursuing claims related to the same set of facts in a prior-filed case in Ohio. *See OJ Commerce LLC v. The*

*NOCO Company*, No. 0:20-cv-60221-WPD (S.D. Fla., filed Feb. 2, 2020), Doc No. 8. The Court granted that motion, transferring OJC's claims to Ohio. *Id. at* Doc. No. 18. OJC then voluntarily dismissed its claims against NOCO. *See OJ Commerce LLC v. Noco Company*, No. 1:20-cv-01198-PAB (N.D. Ohio, filed June 1, 2020), Doc. No. 25.

Home City is now seeking to hale NOCO into a Florida Court by filing a third party complaint against NOCO on July 24, 2020 in the instant case that demands indemnification against OJC's claims. For the reasons detailed below, Home City is entitled to no such relief.

## II. LAW AND ARGUMENT

The Court should dismiss or transfer the Third-Party Complaint for lack of personal jurisdiction, lack of venue, failure to state a valid claim for relief against NOCO, and failure to name a required party.

### A. The Court Should Dismiss Or Transfer This Action For Lack Of Personal Jurisdiction Over NOCO.

This Court should dismiss the Third-Party Complaint pursuant to Fed.R.Civ.P. 12(b)(2) because asserting personal jurisdiction over NOCO in these circumstances would violate the Due Process Clause.

"We consider two questions in resolving personal jurisdiction: (1) whether personal jurisdiction exists over the nonresident defendant [ ] under Florida's long-arm statute, and (2) if so, whether that exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013).

NOCO does not challenge the application of Florida's long-arm statute based on Home City's disputed allegations, as the Eleventh Circuit has held that "a nonresident defendant commits

a tortious act within Florida when he commits an act outside the state that causes injury within Florida." *Louis Vuitton*, 736 F.3d at 1353.

Due process, however, precludes the Court from exercising jurisdiction over NOCO under these circumstances. In specific personal jurisdiction[4] cases, courts "apply the three-part due process test, which examines:

(1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum;

(2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and

(3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'"

*Id.* at 1350 (11th Cir. 2013) (*citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-75 (1985)).

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).

Home City's only allegation in support of personal jurisdiction is that "Third-Party Defendants were directly and purposely availing itself [sic] of the privileges of conducting activities within the State of Florida by placing their products into the stream of commerce with the expectation that they would be purchased and used by consumers in the State of Florida and

[4] General personal jurisdiction is not relevant here because NOCO is not "at home" in Florida but instead is organized under the laws of Ohio and maintains its principal place of business in Ohio. *See BNSF Ry. v. Tyrrell*, 137 S. Ct. 1549, 1558-59 (2017).

filing complaints through Amazon against a company with its principal place of business in Broward County, Florida." (ECF # 52 at ¶9).

Home City has failed to carry its burden to establish a prima facie showing of personal jurisdiction because NOCO's mere placement of products into the stream of commerce, without more, is insufficient to establish jurisdiction. *See Zanakis v. Scanreco, Inc.*, No. 18-cv-21813-UU, 2019 U.S. Dist. LEXIS 89210 (S.D. Fla. Feb. 5, 2019).

Even if they were extensive enough to satisfy due process, NOCO's sales into Florida do not have a sufficient nexus with NOCO's request that Amazon investigate the authenticity of ***OJC's products***. As such, NOCO's admitted commercial contacts do not "relate to the plaintiff's cause of action" or "give rise to it." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Accordingly, this Court should dismiss the Third-Party Complaint or transfer it to the Northern District of Ohio.

### B. The Court Should Dismiss Or Transfer The Third-Party Complaint Because Venue Is Improper.

Pursuant to Fed.R.Civ.P. 12(b)(3), the Court also should dismiss or transfer the Third-Party Complaint because venue is improper in the Southern District of Florida.

"The plaintiff has the burden of showing that venue in the forum is proper." *Pinson v. Rumsfeld*, 192 Fed. App'x 811, 817 (11th Cir. 2006). "If venue is improper, the district court 'shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.'" *Thomas v. Disanto (In re Native American Child A.)*, 762 Fed. Appx. 770, 772 (11th Cir. 2019) (quoting 28 U.S.C. §1406(a)). "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b).[5] If it

[5] Pursuant to 28 U.S.C. §1391(b), "a civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)." *M Tobacos, Inc. v. Case*, No. 14-cv-81481, 2015 U.S. Dist. LEXIS 191206, at *3-4 (S.D. Fla. Apr. 17. 2015) (quoting *Atlantic Marine Const. Co. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49, 56 (2013)).

Here, as this Court has ruled once already, venue is improper in the Southern District of Florida because NOCO is not a resident of Florida and the events giving rise to the claim occurred in Ohio.

First, NOCO is a corporation organized and existing under the laws of Ohio, where it also maintains its principal place of business, a global headquarters, in Glenwillow, Ohio. NOCO does not maintain any offices in Florida. *See* Weiner Decl. at ¶¶3-4.

Second, the events giving rise to the claim occurred in Ohio. NOCO filed in Ohio the relevant requests that Amazon investigate the authenticity of products being sold by OJC. *See id.* NOCO conducted no suit-related activity in Florida whatsoever.

Third, venue would have been proper, and this action could have been brought, in the Northern District of Ohio, where NOCO resides, and where the actions alleged in the Third-Party Complaint against NOCO occurred.

Again, this Court has already considered the question of venue on these facts and found that venue was improper:

> Plaintiffs have not sufficiently tied an event, omission, or publication to this district. Plaintiff has not alleged that the relevant statements were published in the Southern District of Florida nor that the statements were made publicly available in this district . . . . Defendant is a resident of Ohio and is not a resident

---

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."

> of this District. A substantial part of the events or omissions giving rise to the claims did not occur in Florida. Therefore, venue is improper.

*See OJ Commerce LLC v. The NOCO Company*, No. 0:20-cv-60221-WPD (S.D. Fla., filed Feb. 2, 2020), Doc. No. 18 at p.4. Accordingly, the Third-Party Complaint against NOCO should be dismissed or transferred.

### C. <u>The Complaint Should Be Dismissed For Failure To State A Claim.</u>

Even if venue and jurisdiction were proper, Home City has failed to state a claim upon which relief can be granted for numerous reasons. *See* Fed.R.Civ.P. 12(b)(6).

A complaint "must . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Chevaldina v. Katz*, No. 17-22225, No. 2018 U.S. Dist. LEXIS 28725, at *8 (S.D. Fla. Feb. 19, 2018) (quoting *ADA v. Cigna Corp*., 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." *Cutler v. Voya Fin., Inc.*, No. 18-20723, 2018 U.S. Dist. LEXIS 144521, at *3 (S.D. Fla. Aug. 23, 2018) (quoting *Twombly*, 550 U.S. at 570). A "complaint does not suffice 'if it tenders "naked assertions" devoid of "further factual enhancement." *Cutler*, 2018 U.S. Dist. LEXIS 144521, at *3 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The Third-Party Complaint fails to state a claim upon which relief can be granted because it: (1) fails to properly allege the elements of indemnity; (2) does not offer a single particularized fact supporting the conclusion that the NOCO products OJC sold were authentic, let alone that NOCO was put on notice of such demonstrable authenticity; and (3) admits that Amazon, not NOCO, suspended OJC's account after multiple attempts to obtain evidence of authenticity from OJC following reports from multiple rights owners.

**1. <u>Home City Does Not Properly Plead The Elements Of Indemnity.</u>**

As an initial matter, Home City does not adequately allege any of the elements of a cognizable claim for common law indemnification.

"To state a cause of action for indemnity, (1) the party seeking indemnity must be without fault and its liability must be vicarious; (2) the party against whom indemnity is sought must be at fault; and (3) there must be a special relationship between the parties." *Porto Venezia Condo. Ass'n v. WB Ft. Lauderdale, LLC*, No. 11-60665, 2012 U.S. Dist. LEXIS 186997, at *5 (S.D. Fla. Aug. 22, 2012) (*Dade County Sch. Bd v. Radio Station WQBA*, 731 So. 2d 638, 642 (Fla. 1999).

Here, Home City has failed to properly plead that it is without fault. While Home City does make the conclusory allegation that it "was entirely without fault for OJ Commerce's damages," Home City also admits that it and the Third-Party Defendants "all filed alleged counterfeit claims to Amazon." (ECF # 52 at ¶¶19-20). Thus, to the extent that the alleged counterfeit claims to Amazon are responsible for OJ Commerce's damages, Home City concedes that it is at fault. Importantly, Home City fails to explain how NOCO's report regarding jump starters (rather than Home City's report regarding bedding products) triggered Amazon's removal of OJC's bedding product listings, as alleged by OJC. (*See* ECF # 1 at ¶¶22-27).

Similarly, Home City failed to allege that NOCO is at fault. Home City does not allege that NOCO's reports to Amazon are illegitimate, unfounded, inaccurate, or otherwise form the basis for any liability. Home City has not pled that the NOCO products listed for sale by OJC are authentic, a prerequisite for placing any liability on NOCO. Nor has Home City made any specific allegation explaining how or why Amazon's suspension of OJC's Amazon account was proximately caused by NOCO, as opposed to Home City, OJC, Amazon, or any other Third-Party Defendant.

Home City also fails to allege any special relationship between it and NOCO that would justify a claim for indemnification. NOCO and Home City never entered into a contract, quasi-contract, or agreement of any kind. They are not related or affiliated in any way. No law operates to give NOCO any duty to Home City. Accordingly, Home City has failed to allege each element of its claims and is entitled to no relief.

**2. Home City Does Not Sufficiently Allege Product Authenticity.**

Home City also fails to allege any detail regarding the foundation underlying all its claims, namely the assertion that the NOCO products at issue in NOCO's reports to Amazon were authentic. The Third-Party Complaint contains no description of how OJC acquired the products, attaches no invoice, provides no serial number, and fails even to mention the products' origin at all. There is no fact alleged that could permit a fact-finder to conclude that the products were authentic. Likewise, OJC failed to produce any such documentation to Amazon. As a result, because neither Home City nor OJC can refute NOCO's underlying claim of counterfeiting or prove that the products are authentic, a prerequisite to all of OJC's claims, the Court should dismiss the Third-Party Complaint with prejudice.

Moreover, even if the products were originally manufactured by NOCO, the law is clear that they still would be considered counterfeit based on material differences in the products being offered for sale by OJC. "[A] material difference 'may well turn an otherwise "genuine" product into a "counterfeit" one . . . because a difference in products bearing the same name confuses consumers and impinges on the . . . trademark holder's goodwill.'" *Coty Inc. v. Cosmopolitan Cosmetics Inc.*, No. 18 CV 11145, 2020 U.S. Dist. LEXIS 4272, *13-14 (S.D.N.Y. Jan. 9, 2020), *quoting Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 644 (1st Cir. 1992).

In this case, material differences in the warranty protection and services offered in connection with the purported NOCO products listed for sale by OJC render those products counterfeit. For example, any NOCO products sold by OJC lack important warranty protections because NOCO's warranties expressly provide, by their terms, that they do not cover products sold by unauthorized resellers. Each warranty is "made to the original purchaser from NOCO and does NOT extend to any other person or entity and is NOT assignable." *See*, *e.g.*, NOCO Genius G7200 Smart Battery Charger Warranty Guide, available at: https://no.co/media/nocodownloads/format/g/7/g7200-smart-battery-charger-warranty-guide.pdf (last accessed Feb. 16, 2020); *see also* NOCO GENIUS10 Smart Battery Charger User Guide, available at: https://no.co/media/nocodownloads/format/g/e/genius10na_user_guide_1.pdf (last accessed Feb. 16, 2020) ("This Warranty is made solely for the benefit of the original purchaser of the Product from NOCO or from a NOCO approved reseller or distributor and is not assignable or transferable."). These important provisions prevent NOCO from bearing responsibility for products that are improperly stored or handled by unauthorized resellers that it has not vetted.

Customers receiving such products without those warranty protections do not benefit from NOCO's superior repair and replacement services, which constitutes a material difference. *See Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067 (10th Cir. 2009) (finding that at least two federal circuit courts have stated that differences in warranties or service commitments may constitute material difference and noting that it was "aware of no federal circuit court that has held or observed otherwise") (citing *SKF USA Inc. v. Int'l Trade Comm'n*, 423 F.3d 1307, 1312 (Fed. Cir. 2005); *Nestle*, 982 F.2d at n.7 (1st Cir. 1992)); *see also Swatch S.A. v. New City Inc.*, 454 F. Supp. 2d 1245, 1251 (S.D. Fla. 2006) ("The Court finds that the watches sold by Defendant are different from those sold by Plaintiffs in that the ones sold by Defendant lack

warranty coverage."); *ABG Prime Grp., Inc. v. Innovative Salon Prods.*, No. 17-12280, 2018 U.S. Dist. LEXIS 98196, at *11-12 (E.D. Mich. June 12, 2018) ("a missing warranty term can amount to a material difference").

In addition, another material difference between NOCO's products and the products offered by OJC is the sub-standard quality of OJC's customer service. For example, in February 2020, one in three customers reported a negative experience in their dealings with OJC.[6] Customers cited problems with damaged products, incorrect products, difficult returns, and a general lack of responsiveness, among other issues. Association with these kind of negative experiences harms NOCO's brand reputation, frustrates consumers, and materially alters any NOCO products listed for sale by OJC.

"do not put the words "20-Pack" in your item description when you are selling only one. false advertising. i hope amazon punishes companies that do this. "
By chobbes on February 10, 2020.

"worse customer service, do not order from this seller "
By Chinatown C. on February 10, 2020.

"GREAT "
By CENTRAL LINN SCHOOL DISTRICT on February 10, 2020.

"DO NOT order from this vendor. I wish I had seen their poor reputation before I ordered. Item arrived scratched on every piece and they are not refunding, only... "
Read more
By Amazon Customer on February 10, 2020.

"We did not receive our order of the Blazing Needles Tranquil Rest 10" Microsuede Innerspring Futon Mattress and it's been a full month since we ordered this ite...
Read more
By Tyler R. on February 10, 2020.

---

[6] This statistic and the screenshots evidencing consumer reviews below are available at OJCommerce's Amazon Storefront: https://www.amazon.com/sp?seller=A3K90JHFOGRITA. The Court can take judicial notice of extrinsic website evidence in ruling on a Motion to Dismiss. *See Barron v. Snyder's-Lance, Inc.*, No. 13-62496, 2015 U.S. Dist. LEXIS 189625, at *9-15 (S.D. Fla. Mar. 20, 2015) (taking judicial notice of facts evidenced by screenshots of online retail websites, including Amazon); *Jacobs v. Bank of Am. Corp.*, 2017 U.S. Dist. LEXIS 219773, *17 (taking judicial notice of and relying on a "website article"). When "deciding a motion to dismiss …, a court may consider judicially noticed matters without converting the motion to one for summary judgment." *Klayman v. Deluca*, No. 15-CV-80310, 2016 U.S. Dist. LEXIS 34031, at *5 (S.D. Fla. Mar. 15, 2016) (*citing Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, n.9 (11th Cir. 2013)); *see also Aligned Bayshore Holdings, LLC v. Westchester Surplus Lines Ins. Co.*, 2019 U.S. Dist. LEXIS 220127, at *7 (S.D. Fla. Dec. 23, 2019) (*quoting Universal Express, Inc. v. U.S. SEC*, 177 F. App'x 52, 53 (11th Cir. 2006)).

★☆☆☆☆ "item damaged, very difficult to return item. if you read this before your order, DONT order from OJcommerce."

By cman on February 7, 2020.

★☆☆☆☆ "Found a newer model of the same item for a cheaper price and tried to cancel the order like I have done before with amazon purchases. The product had not shipp..." Read more

By Amazon Customer on February 7, 2020.

★☆☆☆☆ "3rd request for return label and refund. No response has been provided. The item described in the details and as pictured was not deliver instead another produc..." Read more

By Victor on February 7, 2020.

Accordingly, the products at issue are materially different from the products sold by NOCO, and even if Home City or OJC could prove that OJC's products were authentic at the time of manufacture, the products still would be considered counterfeits under the law and NOCO's reports to Amazon were legitimate and justified.

**3. <u>Amazon, OJC, Home City, And Other Rights Holders Caused The Alleged Harm.</u>**

Finally, Amazon—not NOCO—suspended OJC's account when OJC failed to provide Amazon with sufficient information to reinstate the account. As a result, neither OJC nor Home City can show that any conduct by NOCO proximately caused the harm alleged in OJC's Complaint.

To prevail on an indemnity claim, Home City must establish that NOCO caused the alleged harm to OJC, given that each of OJC's underlying claims require proof of causation. Both OJC and Home City have failed to adequately allege such causation. *See Advisors Excel, L.L.C. v. Scranton*, No. 14-60558, 2014 U.S. Dist. LEXIS 199141, at *19 (S.D. Fla. Sep. 15, 2014) (dismissing Florida Deceptive and Unfair Trade Practices Act claim in part for failing to allege facts showing causation); *Inetianbor v. Cashcall, Inc.*, No. 13-60066-CIV, 2016 U.S. Dist. LEXIS 191643, at *15 (S.D. Fla. Apr. 5, 2016) ("To prove the causation element of a FDUTPA claim, the 'causation must be direct, rather than remote or speculative.'") (citation omitted); *Realauction.com, LLC v. Grant Street Grp., Inc.*, 82 So. 3d 1056, 1059 (Fla. Dist. Ct. App. 2011) (in tortious interference case, "[t]he requisite showing of causation cannot be supported by mere

supposition that defendant's interference caused the cessation of the business relationship."); *Enteris Biopharma, Inc. v. Clinical Pharmacology of Miami, Inc.*, No. 1:14-cv-22770, 2015 U.S. Dist. LEXIS 188324, at *29 (S.D. Fla. Mar. 20, 2015) (quotation omitted) ("plaintiff must plead and prove that the defendant manifested a specific intent to interfere with the business relationship."). *Frompovicz v. Niagara Bottling, LLC*, 313 F. Supp. 3d 603, (E.D. Penn. 2018) ("[T]he Lanham Act is 'limited to plaintiffs whose injuries are proximately caused by violations of the statute.'") (dismissing claim with prejudice and noting that a Lanham Act plaintiff must show injury "flowing directly" from the alleged wrongful conduct); *Turner v. Wells*, 198 F. Supp. 3d 1355, 1364 (S.D. Fla. 2016) (quoting *Alan v. Wells Fargo Bank, N.A.*, 604 F. App'x 863, 865 (11th Cir. 2015) (quotation omitted) (defamation requires proof "that the falsity of the statement caused injury to the plaintiff.'").

In this case, Amazon or OJC caused the injury alleged, rather than NOCO. At each step in its investigative process, Amazon exercises independent judgment in determining the validity of counterfeiting claims. Amazon's anti-counterfeiting policy, which applies to all users, "encourage[s] rights owners who have product authenticity concerns to notify us." *See* Amazon Anti-Counterfeiting Policy, available at: https://sellercentral.amazon.com/gp/help/external/201165970. By announcing this broad standard that invites reporting of "product authenticity concerns," rather than requiring certainty of counterfeiting, Amazon assumes the burden of making counterfeiting determinations itself. NOCO had, at the time of its requests, and still has, reasonable authenticity concerns about the many products being sold by OJC, an unauthorized seller, across multiple platforms.[7]

---

[7] Far from constituting defamation, a good faith pre-suit report of suspected counterfeiting is protected activity. Intellectual property demand letters, even those sent to third party retail platforms, are considered incidental to a plaintiff's constitutional right of petition and therefore

NOCO also was entitled to rely on Amazon's representation that the service "will promptly investigate and take all appropriate actions to protect customers, sellers, and rights holders." *Id.* Amazon expressly pledges to investigate claims rather than immediately suspend reported accounts. Amazon represents that sellers "may view counterfeit complaints on the Account Health page in Seller Central" and provides sellers with the opportunity to submit documentation demonstrating the authenticity of the products. *Id.*

The very exhibits OJC attached to its prior complaint against NOCO confirm that Amazon conducted an independent investigation, reaching out to OJC multiple times for any evidence demonstrating the authenticity of the products at issue. (*See* ECF # 52 at pp. 50, 54). And, of course, it was ultimately Amazon that made the decision to suspend OJC's account based on the allegations of selling counterfeit goods. The reporting of suspected counterfeit products, in good faith, is a reasonable and necessary measure designed to protect consumers and brands, and NOCO bears no liability to Home City or OJC for making its concerns known to Amazon.

Further, Amazon's decision to suspend OJC's account was informed by reports about OJC's conduct filed with Amazon by multiple other companies, as evidenced by the documents attached to OJC's prior complaint. *See OJ Commerce LLC v. The NOCO Company*, No. 0:20-cv-60221-WPD (S.D. Fla., filed Feb. 2, 2020), Doc. Nos. 1-10, 1-14. NOCO was not the only

---

immune against claims of defamation. *See Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*, No. C14-0950, 2014 U.S. Dist. LEXIS 160980 (W.D. Wa. Nov. 17, 2014) (dismissing reseller's claims against Apple stemming from an infringement notice Apple sent to Amazon concerning plaintiff's allegedly counterfeit iPad covers on the basis that Apple's pre-suit conduct was immune under the *Noerr-Pennington* doctrine) (*aff'd by Hard2Find Access., Inc. v. Amazon.com, Inc.*, 691 Fed. Appx. 406 (9th Cir. 2017); *see also Audi AG v. D'Amato*, 341 F. Supp. 2d 734 (E.D. Mich. 2004) (dismissing defendant reseller's counterclaim for defamation).

company reporting its authenticity concerns about OJC's products to Amazon, and NOCO's report is not the only one cited by Amazon as a basis for the suspension of the account. *Id.*

Because multiple intervening causes resulted in the damages alleged in the Complaint, separate and apart from any action allegedly taken by NOCO, Home City cannot prove any set of facts entitling it to the relief requested.

### D. **The Complaint Should Be Dismissed For Failure To Name An Indispensable Party.**

The Court also should dismiss Home City's Third Party Complaint because it fails to name Amazon as a party. See Fed. R. Civ. Proc. 12(b)(7).

"A party may present by motion the defense that the complaint should be dismissed 'for failure to join a party under Rule 19.'" *Price v. AFT Mgmt., Corp.*, No. 17-61310-CIV, 2018 U.S. Dist. LEXIS 25896, at *5 (S.D. Fla. Feb. 14, 2018) (quoting Fed. R. Civ. P 12(b)(7)). Courts in this Circuit apply a two-step analysis, considering first "whether the absent party is a 'required party' within the meaning of Rule 19." *Price*, 2018 U.S. Dist. LEXIS 25896, at *5 (*citing Molinos Valle del Cibao v. Lama*, 633 F.3d 1330, 1344 (11th Cir. 2011)). If the absent party is required, the court either must join the party or dismiss the action if "in equity and good conscience," the action cannot proceed among the existing parties. *Price*, 2018 U.S. Dist. LEXIS 25896, at *5 (citing Fed. R. Civ. P. 19(b)).

"The Eleventh Circuit has provided that a party is indispensable when he 'emerges as an active participant' in allegations that are 'critical to the disposition of the important issues in the litigation.'" *Tolbert v. High Noon Prods., LLC*, No. 4:18-CV-00680-KOB, 2019 U.S. Dist. LEXIS 2937, at *16 (N.D. Ala. Jan. 8, 2019) (*quoting Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 848 (11th Cir. 1999)).

Here, OJC itself has acknowledged Amazon's active role in both the alleged and threatened harm to OJC. *See* ECF # 1 at ¶ 27 ("Amazon immediately removed OJC's Bedding Products from the Amazon marketplace, and flagged OJC as a counterfeit seller, thus putting OJC at a competitive disadvantage . . . ."); s*ee also id.* ¶ 29 (alleging that HC's "false Counterfeit Claims have put OJC at a significant risk that its selling privileges on the Amazon marketplace will be lost, and its funds withheld by Amazon.").

At a minimum, Amazon's institution, interpretation, and application of its own counterfeit policies is a core issue in the litigation, as OJC itself acknowledges. *See id.* ¶ 19) ("Amazon has established a strict anti-counterfeiting policy, whereby any product that is reported as counterfeit is immediately removed from the Amazon marketplace"); *id.* ¶ 14 ("Amazon's policies, which generally take allegations of the sale of counterfeit products at face value, enable an unscrupulous actor like HC to get a legitimate business like OJC falsely labeled in the Amazon marketplace as an alleged seller of counterfeit goods").

Here, the action cannot equitably proceed without Amazon because any judgment rendered in its absence would be inadequate and would prejudice the absent and existing parties. *See* Fed. R. Civ. P. 19(b)(1-4). This Court cannot fairly order Amazon to reinstate OJC's listings, withdraw any designation of OJC on its marketplace, or refrain from withholding allegedly ill-gotten gains without offering Amazon a chance to present its arguments. Any remedy accorded OJC would be incomplete without such an order. Thus, because OJC and Home City have failed to join Amazon as a party, the Court cannot render a full, fair, and effective judgment in this action. Accordingly, the Third-Party Complaint should be dismissed.

## III. CONCLUSION

For all the foregoing reasons, this Court should dismiss or transfer the Third-Party Complaint against NOCO for lack of personal jurisdiction, lack of venue, failure to state a claim upon which relief can be granted, and failure to name an indispensable party.

Respectfully Submitted,

*/s/Craig S. Barnett*
CRAIG S. BARNETT, ESQUIRE
Florida Bar No. 35548
cbarnett@stearnsweaver.com
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
200 East Las Olas Boulevard, Suite 2100
Fort Lauderdale, Florida 33301
Telephone: (954) 462-9553

**KOHRMAN JACKSON & KRANTZ LLP**

*/s/ Jon J. Pinney*
JON J. PINNEY (0072761)
SEAN P. MALONE (0076353)
One Cleveland Center, 29th Floor
1375 East Ninth Street
Cleveland, Ohio 44114
Phone: 216-696-8700
Fax: 216-621-6536
Email: jjp@kjk.com; spm@kjk.com

*Counsel for Third-Party Defendant The NOCO Company*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 28, 2020, all counsel of record below who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure.

*/s/Craig S. Barnett*
CRAIG S. BARNETT, ESQUIRE

Joshua R. Kon, Esq.
Gabriel Mandler, Esq.
Stok Kon + Braverman
One East Broward Boulevard, Suite 915
Fort Lauderdale, FL 33301
*Counsel for Third-Party Plaintiff Home City, Inc.*

Shlomo Y. Hecht, P.A.
3076 N Commerce Parkway
Miramar, FL 33025
*Counsel for Plaintiff OJ Commerce, LLC*

John Cyril Malloy, III
Oliver Alan Ruiz
Jonathan R. Woodard
Malloy & Malloy, P.L.
2800 S.W. Third Avenue
Miami, Florida 33129
*Counsel for Third-Party Defendants*
*Standard Sales, Inc. and Actiontec Electronics, Inc.*